## KNOX *vs.* EASTON.

| 38 | 345 |
|----|-----|
| 117 | 542 |

### [EJECTMENT.]

1. *Conclusiveness and effect of judgment by consent in ejectment.*—Where a verdict is rendered, by consent, for the plaintiff in ejectment, for the several lots sued for; and the value of each lot, and of the improvements erected thereon by the defendants, is separately assessed; and, on the plaintiffs' declining to pay for the assessed value of the improvements, a judgment is rendered, requiring each defendant to pay to the plaintiff the assessed value of his lot, and declaring that, "on the payment of the said sums respectively, the defendants shall retain the possession of the premises, free and discharged from recovery by said plaintiff, and from all claims and actions whatever for the recovery of title or possession of said premises, and from all such claims by them and all claiming under them, then said payment shall be a bar,"—such judgment, and payment made according to its terms, divests the plaintiffs' title to the land, as between the parties to the suit and their privies, and transfers to the defendants such title as will support an ejectment; and a tenant who was in possession of a part of the premises, and was served with process in the suit, and who attorned to a purchaser from his landlord pending the suit, and whose new landlord was made a party defendant to the suit, is estopped, as against his new landlord, from denying the effect of the judgment.

2. *Error without injury in charge asserting incorrect legal proposition.*—A charge to the jury, which, though incorrect as a general legal proposition, is correct in the particular case when construed in connection with the evidence, is no ground of reversal.

3. *Attornment of tenant to mortgagee or purchaser.*—As against all persons except the mortgagee and those claiming under him, the mortgagor is considered the owner of the land, so long as he remains in possession : and if the mortgagee does not disturb the possession of the mortgagor's tenant, nor otherwise assert his rights under the mortgage, an attornment by the tenant to a subsequent purchaser from the mortgagor is valid and effectual as between themselves.

4. *Abstract charge.*—There is no error in refusing to give an abstract charge.

5. *Purchase of outstanding title by mortgagor's vendee.*—If a purchaser from the mortgagor, subsequent to the execution of the mortgage, buys in a paramount title outstanding in a third person, the purchase does not enure to the benefit of the mortgagee, nor operate as a confirmation of his title.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THIS action was brought by William C. Easton, against Dean Knox, to recover the possession of a city lot in Mobile, and was commenced on the 31st October, 1854. The lot in controversy was described in the declaration as "commencing at a point on the west side of St. Emanuel street, distant sixty feet southwardly from the south-west corner or intersection of St. Emanuel and Conti streets; thence running southwardly, along the west side of St. Emanuel street, ninety feet; thence running westwardly, and parallel with Conti street, one hundred and fifty feet; thence running northwardly, parallel to St. Emanuel street, one hundred and fifty feet, to the south side of Conti street; thence running eastwardly, along the south side of Conti street, fifty feet; thence running southwardly, and parallel with St. Emanuel street, sixty feet; and thence running eastwardly, parallel with Conti street, to the place of beginning." The material facts of the case are thus stated by Mr. Justice R. W. WALKER, in delivering the opinion of the court.

"In 1835, M. D. Eslava purchased from Victor Gannard all the land embraced in the following diagram:"

(For diagram, see next page.)

"In 1836, he divided part of it into three lots, each having a front of thirty feet on St. Emanuel street, and running back one hundred and fifteen feet; and sold and conveyed the same to S. V. Schuyler, who executed separate mortgages on the lots to secure the purchase-money. Schuyler having failed to make payment, the mortgages were foreclosed by Eslava in 1838, and the lots sold under the decrees of foreclosure, in April, 1839. At this sale, Bozereau bought the lot at the corner of Conti and St. Emanuel streets; James Johnson bought the lot immediately south of the Bozereau lot, and Eslava bought the next or third lot; and the purchasers went into possession of their respective lots under deeds from the master in chancery.

```
┌────────────────────────────────────────────────────────┐
│                    Conti street.                    ┆┆ │
│         ┆                115 ft.              ┌─     ┆  │
│         ┆            Lot No. 1.               30 ft. ┆  │
│         ┆              Bozereau.              ┘      ┆  │
│         ┆                115 ft.             ┌─      ┆  │
│         ┆            Lot. No. 2.              30 ft. ┆  │
│         ┆            James. Johnson.          ┘      ┆  │
│         ┆                115 ft.                          │
│         ┆       ---------------------------           │
│  F. Collins' lot.        Old fence.    30 ft.  St. Emanuel Street.
│         ┆            Lot No. 3.                        │
│         ┆              Eslava.                         │
│         ┆                                             │
│         ┆                                             │
│         ┆            Lot No. 4.                        │
│         ┆                                             │
│         ┆                                             │
│                                                       │
│              Nannette Rochon's lot.                   │
│                                                       │
└────────────────────────────────────────────────────────┘
```

"In 1847, the second (or Johnson) lot was sold under execution against the said James Johnson, and was bid off by his son, George W. Johnson, who received the sheriff's deed; and the lot was described in the sheriff's deed as being thirty-six feet front, by sixty-eight feet deep. It appears, however, that there was no change of possession in consequence of the sheriff's sale. George W. Johnson died, without issue, in 1850, leaving all his property, real and personal, to his wife, Glorvina Johnson. James Johnson died in 1851, leaving a will, by which, after making some special bequests, he left all the residue of his estate, real and personal, to his wife, Elizabeth Johnson, and his daughter-in-law, Glorvina Johnson, the widow of his son, George W. Johnson. Henry Chamberlain was appointed and qualified as his executor. Glorvina Johnson, the widow of George W., afterwards intermar-

ried with John S. Rush; and Rush and his wife, on the 22d February, 1854, sold and conveyed the second (or Johnson) lot to Dean Knox, the defendant. Their deed describes the lot as fronting thirty-six feet on St. Emanuel street, and having a depth of one hundred and thirty-four feet; but the warranty only extends to a front of thirty feet.

"It is conceded by the counsel for the appellee, that Knox has a good title, as against the appellee, to this second (or Johnson) lot, to the extent of 30 feet front, measured from the south side of the Bozereau lot, with a depth of one hundred and fiftcen feet. The contest, so far as this lot is concerned, is as to the space of ground, some six feet wide, lying between the south side of the Johnson lot, as laid down in the diagram, and the old fence, the line of which is also designated. The Bozereau lot is not involved in the controversy.

"In 1850, the title of Eslava, and of all persons holding under him, to all the lots embraced in the diagram, was disputed by the heirs of Mrs. Gannard (Elizabeth Chastang). They claimed that her husband, Victor Gannard, had sold the land to Eslava, holding it under the will of his wife; that she, being a married woman, could not devise; and that consequently the land had descended to them as her heirs. That the devise was void, was decided by this court in *Baker v. Chastang*, 18 Ala. 417.

"On the 14th November, 1850, the heirs brought ejectment for all the lands embraced in the diagram, and served the declaration on Berg and Dean Knox, the present defendant, as the tenants in possession. The evidence conduced to show that, when the suit was commenced by the heirs of Chastang, all of the land sued for, not embraced in the Bozereau and Johnson lots, allowing to each of these a front of thirty feet and a depth of one hundred and fifteen feet, except the narrow strip which lies between the old fence and the south side of the Johnson lot as laid down in the diagram, was in the possession of Knox, who held the same as tenant at will of Eslava; that Eslava

employed Stewart & Easton to defend the suit; that, find-
ing that his title could not be sustained against the claim
of Chastang's heirs, Eslava relinquished his possession of
the property to Stewart & Easton, who had acquired the
title conveyed by Eslava, by some of the mortgages which
he had executed before the ejectment suit was begun; and
that Stewart & Easton became defendants to said suit, as
landlords of Knox, in lieu of Eslava.   The record of that
suit shows, that Stewart and Easton did make themselves
defendants thereto, May 29, 1852.

"The exhibits, which form a part of the bill of excep-
tions, show that, on the 27th January, 1850, Eslava sold
and conveyed to Isaac Bell, jr., as trustee, the lot 'on the
west side of St. Emanuel street, between Conti and Gov-
ernment street, measuring sixty feet front on St. Emanuel,
and having a depth of one hundred and thirty feet, bounded
on the east by St. Emanuel street, on the west by property
of Faustin Collins and Joseph Slett, north by property of
person or persons unknown to grantor, and south by the
property of N. Rochon.'   They also show, that Bell, by
deed dated November 17, 1851, sold and conveyed to
Taylor, describing the lot as having a front of ninety feet,
with a depth of one hundred and thirty feet, more or less,
and as bounded east by Emanuel street, north by Johnson's
property, west by Collins', and south by Rochon's; and
that Taylor sold and conveyed to Stewart and Easton, by
deed dated June 2d, 1852, the property being described as
in the deed from Bell to Taylor.

"The record of the Chastang suit does not show any
proceedings therein, after its institution, until May 29th,
1852.   At that time, Bozereau, Chamberlain, executor of
James Johnson, and Stewart and Easton, appeared and
made themselves parties defendant, as landlords of the ten-
ants in possession.   Bozereau claimed the lot at the corner of
Conti and St. Emanuel streets, thirty feet front, and one hun-
dred and fifteen feet deep; Chamberlain, executor of John-
son, claimed the lot immediately south of, and having the
same dimensions as the Bozereau lot; and Stewart and

Easton claimed all the remainder of the premises sued for. By consent, a verdict was rendered in favor of plaintiffs, for the land ;,and the value of each lot, and of the improvements thereon, was separately assessed. The Bozereau lot was valued at $1425 ; the Johnson lot at $400 ; and the remainder, claimed by Stewart and Easton, at $1200. The plaintiffs in ejectment declined to pay for the improvements, as assessed by the jury.; and a judgment was rendered, requiring the defendants respectively to pay to the plaintiffs the value of the lots claimed by them, and declaring that, 'on the payment of said sums respectively, the defendants shall retain the possession of the premises, free and discharged from recovery by said plaintiffs, and from all claims and actions whatsoever for the recovery of title or possession of said premises, and from all such claims by them and all claims under them, then said payment shall be a bar.' ' It was proved that the defendants paid the judgments thus rendered against them ; and on the 14th October, 1854, Stewart released to Easton all his interest in the premises claimed by them. Easton now claims all all the land embraced in this diagram that is not included in the Bozereau and Johnson lots, allowing to each of these lots a front of thirty, and a depth of one hundred and fifteen feet.

"The claim of Knox to the strip of ground six or seven feet wide, lying between the south line of the Johnson lot and the old fence, is founded on the deed from Rush and wife, before mentioned. His claim to the remainder of the land sued for, rests mainly upon his purchase of the premises at a master's sale, on the 2d April, 1855, which was after the commencement of this suit. This sale was made under a decree foreclosing a mortgage, executed by Eslava to Cruzat on 14th February, 1858. The bill to foreclose was filed in September, 1851, and the decree rendered January 30th, 1855. Knox also claims under a quit-claim deed from some of the heirs of Chastang, executed on the 2d June, 1855.".

The court charged the jury as follows :

" 1. If Mrs. Gannard was a married .woman ·when she·· made her will in favor of her husband, that devise would ' be void, as she had no power to devise.by law; :that con-- sequently, if Gannard had no other title to convey to Eslava than that acquired by such devise, his deed would not con-- vey a good title as against the heirs of Mrs. Gannard, and the title of said heirs would be better than that of said:. Gannard.

" 2. That the effect of. the agreement and judgment; shown by the record of the ejectment suit, in which the heirs of Chastang were plaintiffs, and Stewart & Easton and others were defendants, if payment was made accord- ing to the agreement:contained in the record, was to divest the heirs of Chastang of such title as they then had to the lands in controversy, and to transfer to the defendants, if the possession was with them, such an interest therein as would support an action of ejectment.

" 3. That if Chamberlain, at·the time of the suit by Chastang's heirs, was in· full possession of one of the lots in controversy, as agent for the estate of James Johnson, or for that of George Johnson, and was acting in reference to such lot for the benefit of either estate, or for that which had a better right to such lot, without a definite under- standing as to the relative rights of the two estates in respect to it; and if, being so in possession, he made him- self a party to the suit as executor of the estate of James Johnson, without instructions from. any one so to. make himself a party,—yet the effect of; the judgment and agreement in the case, and of payment pursuant to such agreement, would be, as against Chastang's heirs, to trans- fer to him their title to the lot he was so in possession of and defending; but, as between the estates of James John- son and George Johnson, the agency of Chamberlain would enure to the benefit of that which had the better right.

" 4. That if they believed the defendant Knox was the tenant of Eslava as to a part of the land in controversy, and that Stewart & Easton were substituted to the posses- sion of Eslava as to such part, then; until he had.surren-

dered the possession to Eslava, or to those substituted to his possession, he could not resist the claim for possession on the part of Eslava, or of those substituted to his possession by force of the deeds which he exhibited, either from the register in chancery, or from the heirs of Mrs. Gannard.

"5. That the Spanish concession, and the confirmation of the same by the United States, and the location thereof in favor of Mrs. Chastang (Gannard), gave her a complete title; and if the six or seven feet excess over the thirty feet of the Johnson lot were included in said concession and confirmation in favor of Mrs. Gannard, or in those having such her title, (?) would be paramount to a title to such excess derived from her husband, if the only title he had was acquired by virtue of the devise to him by his wife.'

The defendant excepted to each of these charges, and then requested the court to give the following charges:

"1. That if the jury believed, from the evidence, that George W. Johnson, and those under whom he claimed, had been in quiet, peaceable, and uninterrupted possession of said lot, for more than twenty years before the commencement of the suit by the heirs of Chastang, claiming title to it, then they had a perfect title as against said heirs; and the fact that Chamberlain, as the executor of James Johnson, made himself a party as the executor of a person who had no title or claim to the land, did not divest his title, and the plaintiff could not recover as to that portion of the land claimed in the declaration in ejectment.

"2. That if they believed, from the testimony, that the defendant (?) and claimed to hold the ninety feet adversely to all persons claiming title to it at the time Eslava made the parol transfer to Stewart and Easton, such transfer passed no right to the possession as against the defendant.

"3. That when Eslava mortgaged the land to Cruzat and another, if Knox was at the time the tenant of Eslava, he became the tenant of the mortgagee; and that if he afterwards purchased the title under which he entered, he had a right to dispute the title of the plaintiff.

"4 That, from the evidence, Knox was never the tenant of Stewart & Easton, nor of W. C. Easton.

"5. That if Stewart & Easton, and the other parties defendant, defended the suit of Chastang's heirs upon the title of Eslava, and upon no other title, then the judgment or agreement, entered by consent, was a confirmation of the title of Eslava and those claiming under it, and the plaintiff is estopped from denying his title."

The court refused each of these charges, and the defendant excepted to their refusal; and he now assigns as error the charges given, the refusal of the several charges asked, and the rulings of the court on the evidence to which exceptions were reserved.

R. H. SMITH, and WM. BOYLES, for appellant.
GEO. N. STEWART, contra.

R. W. WALKER, J.—(After stating the facts as above copied.) The questions to be tried in the court below, were—1st, who had the best right of possession of the slip of six or seven feet north of the old fence; and, 2d, who had the best right of possession of the remainder of the land sued for. We shall not attempt to answer these questions, but will confine ourselves to an examination of the several charges given and refused. To the first and fifth charges given, no objection has been made in the arguments submitted on behalf of the appellant.

[1.] The obvious meaning of the second charge was, that the effect of the agreement and judgment in the Chastang suit, if payment was made according to the agreement, was to divest the heirs of Chastang of title to the lands in controversy, and to transfer to Stewart & Easton such an interest in the parcels claimed by them in that suit, as would enable them to maintain ejectment; provided that, at the time of the recovery and agreement, the possession was with Stewart & Easton.

While it may be admitted, that the judgment in the Chastang suit, followed by the required payment by

23

Stewart & Easton, did not, as against persons not parties or privies to the record, operate a conveyance of the title of Chastang's heirs to Stewart & Easton, it cannot be doubted, that all persons belonging to either of these classes are estopped by the record from denying that, by such judgment and payment, Stewart & Easton did acquire the title of Chastang's heirs, to the parcels claimed by them. The record of that suit shows, that Knox was served with the declaration and the usual notice from the casual ejector. This was sufficient to bring him into court, and might, perhaps, justify us in holding him bound by the estoppel of the judgment, although he did not come in and make himself defendant to the action.—*Cruise v. Riddle*, 21 Ala. 791; 2 Phill. Ev. (C. & H's Notes, Edwards' ed. 1859,) p. 8, note 253, p. 11–42, note 270; 3 *ib.* 625; *Shumake v. Nelms*, 25 Ala. 135.

But we need not rest our decision on this single ground. The evidence is all set out; and the charge we are considering, as well as all the others, must be construed in connection with the evidence. The evidence tended to show that, when the Chastang suit was begun, Knox was in possession, as the tenant of Eslava, of the whole of lot number four, and all that part of lot number three, which lies south of the old place; that pending the suit, Eslava transferred his possession to Stewart & Easton; that, by his consent and direction, Knox attorned to Stewart & Easton, who made themselves defendants to the action as landlords of Knox; and that matters stood thus when the judgment in the ejectment suit was rendered. The evidence that Knox, being already in possession, attorned to them, and became their tenant, is the only evidence that was offered, tending to show that Stewart & Easton were, at the time of the recovery, in possession of the land claimed by them. Unless, therefore, Knox was their tenant, they were not in possession at all, and they were only in possession to the extent to which he was their tenant. In effect, then, the charge was that, if, at the time of the recovery, Knox was in possession as the tenant

of Stewart & Easton, the agreement and recovery, and payment in pursuance thereof, operated a divestiture of the Chastang title, and a transfer to Stewart & Easton of such an interest in the land which Knox held as their tenant, as would enable them to maintain ejectment.

As we have seen, the record of the Chastang suit shows that Knox was served with the declaration and notice, and that Stewart & Easton made themselves defendants to the action. Now, if, in addition, it was proved that, pending the suit, Knox became the tenant of Stewart & Easton, and so remained until the recovery, it cannot be doubted, we think, that he is bound by the judgment, so far as it relates to the land of which he was in possession as the tenant of Stewart & Easton, and is thereby estopped from denying that, as to that land, the recovery and payment did effect a divestiture of the title of the Chastang heirs, and the transfer to Stewart & Easton of such an interest as would support an ejectment.—See 2 Phill. Ev. (C. & H's Notes, Edward's ed. 1859,) p. 15, note 260 ; ib. p. 19, note 261 ; Jackson v. Stone, 13 Johns. 447 ; Shumake v. Nelms, 25 Ala. 126 (135); Howard v. Kennedy, 4 Ala. 592.

[2.] The court did not decide that Stewart & Easton were in possession, but left that question to the jury, and instructed them that the effect of the recovery, as the foundation of a right to maintain ejectment, would depend upon their being in possession. As the only possession they attempted to prove was the possession of Knox as their tenant, it follows that the appellant cannot have been injured by the second charge. A charge which is correct in the particular case, though incorrect as a general legal proposition, is not a ground for reversal. There can be no doubt that, when the action of ejectment was brought by the heirs of Chastang, they had the legal title to all of this property.—Baker v Chastang, 1S Ala. 417.

As no part of the lot to which the *third* charge relates was in controversy here, the defendant could not have been injured by it.

[3.] The fourth charge given, and the third and fourth

charges refused, can best be considered together. Knox, as already noticed, was served with the declaration in the Chastang suit; and we have seen, that, if, in addition to this, it was proved that he was the tenant of Stewart & Easton, who made themselves defendants to the action, he is estopped from denying that, as to the land held by him as their tenant, they have been invested with the paramount title of the Chastang heirs. Hence, if there was error in the fourth charge, it was error without injury. It is said, however, that notwithstanding the attornment of Knox to Stewart & Easton, (which the evidence tended to establish,) he was not, in legal judgment, their tenant; that when Eslava, in 1848, mortgaged the property to Cruzat, Knox became, by operation of law, the tenant of Cruzat, the mortgagee; and that the subsequent attornment to Stewart & Easton, who derived title under a mortgage younger than Cruzat's, had no consideration to support it, and was void. But, as against all persons, except the mortgagee and those claiming under him, the mortgagor is considered as owner of the land, so long as he remains in possession of it; and subject to the lien of the mortgage, the legal rights and remedies of others may be sought, asserted, and enforced, in the same manner as if no such mortgage existed.—*Doe v. McLoskey*, 1 Ala. 708; Coote on Mortgages, 322-7, and notes. Accordingly, the mortgagor in possession may hire or lease the mortgaged property, and receive the rents and profits, until the mortgagee gives notice to the tenant not to pay to the mortgagor.—*Hutchinson v. Dearing*, 20 Ala. 802; *Mansony v. United States Bank*, 4 Ala. 735; *Branch Bank v. Fry*, 23 Ala. 773. There was no evidence that Cruzat ever entered, or demanded possession of Eslava or his vendees, or in any manner asserted against the latter his rights under the mortgage. The mortgagor and his vendees being thus left in undisturbed possession, the attornment of Knox to Stewart & Easton was valid and effectual.

[4.] There was no evidence to sustain the first and second charges asked by the defendant. Being abstract, the court did not err in refusing to give them.

[5.] We cannot assent to the proposition involved in the fifth charge asked,—that when the vendee of a mortgagor purchases in the paramount outstanding title of a third person, the purchase enures to the benefit of the mortgagee, and operates as a confirmation of his title.

It is very properly conceded by the counsel for the appellee, that the plaintiff has no right to recover any part of the Johnson lot, allowing to the same a front of thirty, and a depth of one hundred and fifteen feet. It appears, however, that the verdict and judgment embrace a part of this lot; for the recovery is for all the land west of one hundred feet from St. Emanuel street; in other words, the recovery includes fifteen feet from the west side of the Johnson lot, to which the plaintiff has no claim. But this matter is not involved in any of the exceptions brought before us; and as the plaintiff expresses a willingness to enter a *remittitur* as to this part of the recovery whenever called upon, it is not likely that the mistake will injure the defendant.

Judgment affirmed.