### GREENWOOD et al. v. BENNETT.
### (6 Div. 589.)

(Supreme Court of Alabama.  Nov. 16, 1922. Rehearing Denied Jan. 25, 1923.)

**1. Tenancy in common ☞55(3)—One co-tenant may recover entire tract in his own name.**

One tenant in common may sue in ejectment and recover the entire tract in his own name from one not claiming under a tenant in common.

**2. Vendor and purchaser ☞196—Rent passes with reversion of freehold.**

If, before maturity of a note for rent, the reversion of the freehold passes to another, the rent passes, unless the right thereto or the right to collect it is reserved to grantor.

**3. Landlord and tenant ☞15—Attornment by tenant to subsequent purchaser is effectual as between them.**

Attornment by a tenant to a subsequent purchaser is effectual as between them.

**4. Landlord and tenant ☞15 — Payment of rent to subsequent purchaser is evidence of attornment.**

Payment of rent to a subsequent purchaser as per the terms of the lease is evidence of attornment.

**5. Landlord and tenant ☞68—Tenant, attorning to subsequent purchaser, estopped to deny latter's title.**

A tenant, who has attorned to a subsequent purchaser, is estopped to deny the latter's title or right to maintain unlawful detainer.

**6. Landlord and tenant ☞25(1) — Written lease, executed by tenant and accepted by landlord, binds tenant where term is certain.**

A lease, executed by the tenant and accepted by the landlord as their binding contract in writing as affecting the property in question, "for and during the term of three years, to wit, from the 1st day of October, 1918, to the 30th day of September, 1921," *held* binding on the tenant; there being no uncertainty as to the term.

**7. Landlord and tenant ☞291(12)—Notice to lessees of subsequent purchasers' desire to reduce term held admissible in lessees' action of unlawful detainer against subtenant.**

In unlawful detainer by lessees, to whom defendant's prior lease of part of the prem-

ises, reserving to lessor the right to terminate it on six months' written notice on sale of the premises, was assigned, a written notice to plaintiffs by lessor and subsequent purchasers of the entire premises of the latter's desire to reduce the term of plaintiffs' lease, as authorized thereby, to 5 years and 6 months from the date of such notice, was admissible; the stipulations as to termination in the respective leases tending to show that such restrictions were not for the mere use of grantor, but were a servitude appendant to the premises.

**8. Landlord and tenant ☞39—Lease construed most strongly against lessor only in case of ambiguity and uncertainty.**

A lease must be construed most strongly against lessor and liberally in favor of lessee only in case of ambiguity and uncertainty; the general rule being to construe it according to the parties' intention as gathered from the whole instrument, and, if the language is not clear, the circumstances attending its execution and the subsequent acts of the parties.

**9. Landlord and tenant ☞93 — Lessees to whom subtenant attorned could demand possession from latter after giving required notice following subsequent purchasers' notice of desire to reduce lessees' term.**

Lessees, to whom a tenant of part of the leased premises attorned on lessor's assignment of his lease, which reserved to lessor the right to terminate it on 6 months' notice on sale of the premises, could demand possession on giving the required notice, following notice to them of subsequent purchasers' desire to exercise their option to reduce the term of the lease of the entire premises, at any time before lessees' right of possession returned to the owners of the fee on expiration of the term or was merged in the purchasers' reversion.

#### On Rehearing.

**10. Joint tenancy ☞1—Nature of "joint tenancy" stated.**

For the purpose of tenure and survivorship, each of several joint tenants is the holder of the whole, and, for that of alienation, each has his own share, which is presumed equal; "joint tenancy" existing where the owners hold "per my et per tout."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint Tenancy.]

**11. Landlord and tenant ☞93—Option to terminate lease must be exercised by optionee or successor in interest within terms of contract and parties' expressed intention.**

An option or right to terminate a lease must be exercised within the terms of the contract and the parties' expressed intentions by the party for whose benefit it is reserved or a successor in interest, if entitled to exercise the right as shown by the fair intention of the parties collected from the terms of the instrument, on compliance with the provisions of the lease reserving such right.

**12. Landlord and tenant ☞94(3)—Notice of termination of lease held sufficient.**

Under a lease of a "storehouse and premises known as No. 411 No. Twentieth street,"

to be occupied "as a fruit stand and general store and not otherwise," reserving to lessor the right to terminate the tenancy on 6 months' notice on sale of the premises, a notice signed by only two of four lessees of the building, of which such premises were a part, that the owner had sold and conveyed "the building known as Nos. 409, 411 and 411½," that the purchasers "hereby give notice to you through us of their and our desire to reduce said term," and that the "term of said lease is reduced to six months from the date of this notice," *held* sufficient, where the evidence showed that those signing it had authority to act for those not signing, and all joined in the statutory notice to quit (Code 1907, § 4263) and in an action of unlawful detainer, though joint tenants by deed are made tenants in common by section 5203; the whole title and possession of the specific premises being treated as an entirety for the purposes declared, and subject to the right imposed by lessor for the benefit of all stores in the same building.

**13. Landlord and tenant** ⬥94(3)—Notice of termination of lease sufficient if intent to exercise right is fairly communicated.

The right or option to terminate a lease and notices of the exercise thereof are not strictly construed, and the notice is sufficient if the parties' intention is fairly communicated.

**14. Landlord and tenant** ⬥94(3)—Common-law rule as to sufficiency of notice of termination of lease obtains in absence of statute.

The common-law rule as to the sufficiency of a notice of the landlord's desire to exercise a reserved right to terminate the lease obtains in Alabama, where there is no statute to the contrary.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action of unlawful detainer by Arthur Greenwood and others against Angelo Bennett. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Erle Pettus, of Birmingham, for appellants.

The burden and benefit of covenants of a lease pass to the assignee of the leasehold, and the assignment of the lease would have been good without attornment. But defendant, having attorned to plaintiffs, is estopped to deny or question plaintiffs' title. 1 Tiffany, Real Prop. (2d Ed.) §§ 53e, 54a, 54b, 56, 56e, 158, 159, 181, 182; Code 1907, § 4731; 179 Ala. 619, 60 South. 917. Duration of the lease is fixed by the stipulation of the instrument itself. 17 Cyc. 625; 24 Cyc. 859, 902; 200 Ala. 53, 75 South. 365. One tenant in common may sue for and recover the entire tract, and would therefore be authorized in his own name to make demand or give notice prerequisite to bringing such suit. 157 Ala. 434, 47 South. 725; 171 Ala. 632, 54 South. 549. If, before maturity of a rent note, the reversion of the freehold has passed to another, the rent also passes, notwithstanding assignment of note. 60 Ala. 448; 78 Ala. 158; 135 Ala. 209, 33 South. 152. An attornment by the tenant to a subsequent purchaser is valid and effectual as between themselves. 38 Ala. 345; 85 Ala. 137, 4 South. 752; 71 Ala. 570; 123 Ala. 488, 26 South. 129; 190 Ala. 599, 67 South. 403.

Weatherly, Birch & Hickman, of Birmingham, for appellee.

If it be conceded that the Greenwoods were the proper parties to give the six months notice, even then the notice of October 11th was ineffective, in that it was signed by only two of the joint tenants, even if it be conceded that the Greenwoods intercepted the reversion between Nabb and the Nabers. Notice to quit by any number less than all of the joint lessors will not terminate tenancy, so as to authorize summary proceedings to oust tenant. 45 N. H. 188, 86 Am. Dec. 153; 17 Hun (N. Y.) 275; 79 Okl. 165, 192 Pac. 358, 12 A. L. R. 819; 251 Fed. 226, 163 C. C. A. 382; 139 La. 1010, 72 South. 718. The grantee of a lessor, who takes a transfer of title after the lessee goes into possession, cannot maintain unlawful detainer. 35 Ala. 296; 146 Ala. 189, 40 South. 955; 157 Ala. 493, 47 South. 1027; 176 Ala. 619, 58 South. 195. An independent stipulation purporting to bind only the original parties does not bind assignee in absence of an agreement on the part of the assignee. 121 Ala. 672, 25 South. 720. A lease must be construed, in the light of the intention of the parties thereto, most strongly against the lessor, and most liberally in favor of the lessee, in case of any uncertainty or ambiguity. 154 Ala. 103, 45 South. 624; 24 Cyc. 914. In order to constitute the relation of landlord and tenant, or to substantiate an attornment of rent, there must be more than the mere payment of rent; it being necessary that there be a recognition on the part of the tenant of the substituted landlord as a landlord. 176 Ala. 619, 58 South. 195.

### Statement.

THOMAS, J. The action was unlawful detainer, and resulted in judgment for defendant. The property in question was leased by C. H. Nabb, the landlord, to defendant, Bennett, on November 19, 1918. The lease contained the following provisions:

"Witnesseth, that the lessor does hereby rent and lease unto the lessee the following premises in the city of Birmingham, Ala., viz. that certain storehouse and premises known as No. 411, No. Twentieth street, about 17 feet by 75 feet in size, for occupation by him as a fruit stand and general store, and not otherwise, for and during the term of three years, to wit, from the 1st day of October, 1918, to the 30th day of September, 1921. * * *

"The terms and conditions typewritten on

the back hereof are hereby made a part of this lease as fully as if set forth in the face hereof, and shall be binding upon both parties hereto. * * *"

On the reverse or back of said lease is the following:

"1. The landlord reserves the right to terminate this lease at any time after the expiration of the first year thereof upon six months' notice in writing given the said lessee, upon a bona fide sale of said premises having been made by the landlord. 2. The lessee does hereby pay to the lessor six months' rental in advance on said premises. * * *"

"For value received, the undersigned hereby transfers and assigns to Arthur and Harry, and Spiro, and James Greenwood, all his rights in and under the foregoing lease, together with the right to the rents to be paid under said lease, without recourse on him.    Executed as of October 1, 1919.   C. H. Nabb."

The building embracing the store leased to Bennett was leased by Nabb to the Greenwoods (plaintiffs in the court below, appellants here) on July 25, 1919. In that lease was the stipulation that the premises are leased to September 30, 1926.

"It is understood and agreed that J. H. F. Moseley has a lease on No. 411½ North Twentieth street (including second floor of both No. 409 and No. 411 North Twentieth street), which expires September 30, 1920, and that Angelo Bennotos has a lease on No. 411 North Twentieth street, which expires September 30, 1921, and that said last lease may be terminated by giving six (6) months' notice, in the event of a sale of the property described therein.   Said leases are to be assigned to the lessees herein by the lessor herein as of October 1, 1919, and said lessees shall thereupon succeed to all the rights of the lessor in said leases, and in the event of a sale of the premises hereby leased the term of this lease may, at the option of the purchaser, be reduced so as to expire five (5) years and six (6) months from the date such purchaser shall give notice to the lessees herein of his desire to so reduce said term.   Subject to the terms of their respective leases, said Moseley and Bennotos shall have the right of possession of the premises leased by them respectively until the end of the term of their respective leases, or until the same shall be terminated pursuant to provisions therein."

On that date, appellee being in possession of a portion of the premises—that part in dispute known as No. 411 North Twentieth street, Birmingham—and Nabb having transferred all his rights under the lease, together with rights to the rents (as of October 1, 1919), in August, 1919, paid rent to Nabb "up to October 1, 1919," and was instructed by Nabb to pay the rent accruing after October to the Greenwoods, which he did to the time the controversy arose as to the right of termination of his lease.

The whole property was sold on October 1, 1919, by the owner, C. H. Nabb, to S. F. and F. E. Nabers, who on the 10th day of that month addressed a communication to the Greenwoods as follows:

"You are hereby notified that the purchasers of said property desire to exercise the option of reducing said lease and hereby give notice to you as lessees of their desire to so reduce said term and hereby give notice that the term of said lease is reduced to five years and six months from the date of this notice."

Which expiration was October 10, 1924. This notice was not admitted in evidence on defendant's objection, to which exception was reserved.

On the same day said purchasers gave notice to:

"Messrs. Arthur Greenwood, Harry Greenwood, Spiro Greenwood, James Greenwood. You are hereby authorized to give notice to Angelo Bennett to vacate the premises subleased by him, namely, that certain storehouse and premises known as No. 411, No. Twentieth street, about 17 feet by 75 feet in size, in accordance with all the terms and stipulations of the original lease from C. H. Nabb to Arthur Greenwood, Harry Greenwood, Spiro Greenwood and James Greenwood, and the terms of the sublease.   This the 10th day of October, 1919.   Frank E. Nabers.   Sam'l F. Nabers."

On the following day notice was given defendant as follows:

"You are hereby notified that C. H. Nabb has sold and by deed conveyed to Drs. S. F. and F. E. Nabers the land including the building known as Nos. 490 [no doubt meaning 409], 411 and 411½ North Twentieth street.

"According to the provision in our lease, 'the landlord reserves the right to terminate this lease at any time after the expiration of the first year thereof upon six months' notice in writing given the said lessee.'

"You are hereby notified that the purchasers of said property desire to exercise the option of reducing said lease, and hereby give notice to you through us of their and our desire to reduce said term, and hereby give notice that the term of said lease is reduced to six months from the date of this notice.

"Executed in duplicate this 11th day of October, 1919.   Harry Greenwood, Arthur Greenwood, by S. Greenwood."

And on March 10, 1920, notice was given defendant that his lease expired with the month "as per agreement in your [his] lease." Pending other negotiations (by the lessees, Greenwoods, with the tenant Bennett) if he saw his "way out to remain there, the rent will be $200 per month temporary until further notice, beginning with the month of April, 1920." And on June 5, 1920, defendant was given notice that:

"Your lease to the premises now occupied by you, namely 411 North Twentieth street, Birmingham, Ala., having expired, and your possessory rights in said premises having terminated, demand is hereby made upon you for immediate possession of said premises, and for payment of rent due from the expiration of your lease. This the 5th day of June, 1920.   Arthur Greenwood, Harry Greenwood, Spiro Greenwood,

James Greenwood, by Erle Pettus, as Attorney."

The service of the several notices, the fact that after October 1, 1919, defendant paid rent to one of the Greenwoods, as he was directed by Nabb, that he went into possession of the premises in question after November 19, 1918, and retained same to and at the date of the trial in the circuit court, are uncontroverted facts, and on June 16, 1920, the unlawful detainer suit was instituted.

## Opinion.

[1] If the notice and demand may be given by Greenwood, that given was sufficient for the purposes of an unlawful detainer as a substantial compliance with the statute, though not signed by all but a majority of the Greenwoods. Code, § 4263; Johnson v. Blocton-Cahaba Coal Co., 205 Ala. 373, 375, 87 South. 559; Eddins v. Galloway Coal Co., 205 Ala. 361, 87 South. 557; Ross v. Gray Eagle Coal Co., 155 Ala. 250, 46 South. 564; Kennedy v. Hitchcock, 4 Port. 230; Hilliard v. Carr, 6 Ala. 557; Barnewell v. Stephens, 142 Ala. 609, 38 South. 662; Shepherd v. Parker, 157 Ala. 493, 47 South. 1027; 26 C. J. 88, p. 838. One tenant in common may sue for and recover the entire tract in his own name. Lecroix v. Malone, 157 Ala. 434, 47 South. 725; Blakeney v. Du Bose, 167 Ala. 627, 52 South. 746; Hooper v. Bankhead, 171 Ala. 626. 54 South. 549. However, these authorities were in ejectment, against a person not claiming under a tenant in common: in such case one tenant in common may recover the entire tract in his own name.

[2-6] If, before the maturity of the note given for the rent, the reversion of the freehold passes to another, the rent passes unless such right or the right to collect it is reserved to the grantor. Deposit Bank v. Caffee, 135 Ala. 208, 33 South. 152; Ala. Gold Life Ins. Co. v. Oliver, 78 Ala. 158; Coffey v. Hunt, 75 Ala. 236; Westmoreland v. Foster, 60 Ala. 448; Tubb v. Fort, 58 Ala. 277; English v. Key, 39 Ala. 113. The grantor, Nabb, instructed the tenant, Bennett, to pay after-accruing rent to the Greenwoods, and this he did. An attornment by the tenant to a subsequent purchaser is effectual as between themselves; the payment of rent as per the terms of the lease was evidence of or tended to show attornment; no evidence being introduced to the contrary. Birmingham Fuel Co. v. Boshell, 190 Ala. 597, 599, 67 South. 403; Howard v. Jones, 123 Ala. 488, 26 South. 129; Perkerson v. Snodgrass, 85 Ala. 137, 141, 4 South. 752; Houston v. Farris, 71 Ala. 570; McMillan v. Otis, 74 Ala. 560; Knox v. Easton, 38 Ala. 345; Edwards v. L. & N. R. Co., 202 Ala. 463, 80 South. 847. Having attorned to the plaintiffs, the tenant as defendant is estopped to deny or question the title or right of a purchaser to whom he had attorned to maintain unlawful detainer after that attornment. Hill v. Harris, 179 Ala. 614, 619, 60 South. 917; Code, § 4731. There is no uncertainty of the term of the lease— its duration is fixed by the stipulations of the parties carried into their lease, executed by the tenant and accepted by the landlord as their binding contract in writing as affecting the property in question for the time and to the extent indicated. Sarratt v. Arthur, 200 Ala. 53, 75 South. 365; Watkins v. Roden Coal Co., 205 Ala. 367, 87 South. 565.

[7] Assignment of error is predicated on trial court's sustaining defendant's objection to admissibility in evidence of the written notice executed by Frank E. and S. F. Nabers and C. H. Nabb, the purchasers and the original landlord, respectively, and addressed to the several Greenwoods. It was their notification of the sale of the whole property, the land and buildings known as Nos. 409, 411, 411½ North Twentieth street, etc., and including the premises theretofore leased by Nabb to Bennett and other tenants, and that the purchasers, Nabers, claimed thereafter to be entitled to all accruing rents under the terms of said lease and to "all rights of the lessor under said lease." That notice called attention to the provision in the lease that in the event of a sale of the leased premises, "the term of * * * lease may, at the option of the purchaser, be reduced so as to expire five years and six months from the date such purchaser shall give notice to lessees" of their desire; gave notice to the Greenwoods that the purchasers of said property desired and were exercising the right of reducing the lease to the extent indicated. A part of the property leased to the Greenwoods and sold to the Nabers, and involved in this suit, was theretofore leased by Nabb to Bennett with the reservations we have indicated. That is, to repeat, on the 25th day of July, 1919, Nabb, as landlord, having leased to the Greenwoods the entire building (including the property theretofore leased to Bennett) the term of the lease being from the 1st day of October, 1919, to September 30, 1926; the Nabb-Greenwood lease made specific reference to the Angelo Bennett lease; that it was to be assigned to the lessees therein by the lessor as of date October 1, 1919, and that it was so duly assigned; and that "said lessees shall thereupon succeed to all the rights of the lessor in said leases," and stipulated that in the event of a sale of the premises the term of the lease may, at the option of the purchaser, be so reduced as to expire 5 years and 6 months from the date such purchaser shall give notice to the lessees of his desire to so reduce said term. Subject to the terms of the respective leases, Bennett (and Moseley) shall have the right of possession of the premises leased by them respectively until the end of the term of their leases, or until the same be terminated pursuant to "provisions therein."

It was the intention of Nabb, the landlord

and owner of the freehold, and the Greenwoods, that the Bennett lease should be the binding contract between Bennett and the Greenwoods, and to that end the lease from Nabb to the Greenwoods contains the stipulations that, in the event of the sale of the premises at the option of the purchasers, the terms of the leases shall be reduced as stipulated, provided the purchaser should give due notice to the lessee of his desire to so reduce the term. In accordance with this stipulation, the foregoing notice of the desire of the purchasers to terminate the lease, on notice given by them to the Greenwoods, the owners of the leasehold estate, on the 10th day of October, 1919, should have been admitted in evidence. The purchaser of the freehold, Nabers, and the original landlord, Nabb, joined in such notice to the Greenwoods, owners and holders of the lease, on the whole premises, including that held by Bennett. This notice was admissible for the purpose of showing the desire and the exercise of the right of reducing the terms of the lease to the Greenwoods, who had succeeded to the rights of Nabb as landlord, as affecting the lease of a portion of the premises by defendant Bennett, and also shedding light upon and in explanation of authority for the notice given by the Greenwoods to the defendant of a desire to terminate the Bennett-Nabb lease upon 6 months' notice given in writing.

[8] The stipulation contained in the respective leases being a restriction imposed by the grantor upon granted premises for the term indicated, operated to enhance the value of this and the adjacent premises or separate portions or space in the same building, and was a strong circumstance to be considered with the provisions of the lease as acted upon by the parties, tending to show that such restrictions were not for the mere use of the grantor, but were a servitude appendant to the premises for the time indicated in the lease. Leek v. Meeks, 199 Ala. 89, 74 South. 31; Patterson v. A. C. L., 202 Ala. 583, 81 South. 85. It is true that it is only in the case of ambiguity and uncertainty that the rule is given application, that a lease must be construed most strongly against the lessor and liberally in favor of the lessee (People's Bank v. Tissier, 154 Ala. 103, 45 South. 624), the general rule of construction being that a written lease is construed according to the intention of the parties thereto, to be gathered from the whole instrument, rather than from a single clause or clauses thereof; that, where the language is not clear, or circumstances attending its execution, the acts of the parties subsequent thereto may be considered in ascertaining the intention of the contracting party (Montgomery Enterprises v. Empire Theatre Co., 204 Ala. 566, 86 South. 880, 19 A. L. R. 987; Porter v. Henderson, 203 Ala. 312, 82 South. 668; Patterson v. A. C. L., supra).

[9] Though the right of reduction of lease survived the alienation of the land by Nabb, and inured to the benefit or interest of the purchasers (Nabers), were the Greenwoods authorized to make the demand for possession on June 5, 1920, and thereafter to institute the suit by the fact of attornment to them as lessees of the whole property under the lease from Nabb to the Greenwoods and the assignment to the Greenwoods by Nabb of his lease to Bennett to the portion of the premises in question? It was the intention of the respective contracting parties to the Bennett and Greenwood leases that, on a bona fide sale of the property by the landlord after the expiration of a year of tenure of the Bennett lease, the then landlord might shorten the term of that lease on notice to a period of 6 months therefrom. Was it in contemplation of Nabb and Bennett that a concurrent lease on another part of the premises should take effect during the period of the Bennett lease, or after the expiration of the Bennett lease; the condition precedent being a bona fide sale by the landlord of the property and due exercise of the right of reduction of the term of Bennett's lease on 6 months' notice? The sale of the property in contemplation of the parties to the lease, and the stipulation therein with reference thereto, was a sale by the owner of the freehold, and not a sale or assignment of the leasehold interest in all or a part of the property. Nabb assigned to the Greenwoods the Bennett lease under the terms of that instrument, that it may be terminated after the expiration of the year and the giving of the prescribed notice by the landlord, upon a bona fide sale of such premises having been made by the landlord. The landlords, within the contemplation of the parties, and so referred to in their lease under the instant facts, were Nabb, the Greenwoods, or the Nabers, as the case was, and we are of opinion that the provision was for the benefit of the purchaser. On due notice and demand from the Nabers to the Greenwoods the latter were required to deliver the possession they held to the Nabers at the expiration of their lease as reduced in term to 1924. In the attempt to put themselves in the way to do this, the Greenwoods, *the landlord to whom Bennett had attorned*, gave notice of reduction of the term, per lease stipulation, and thereafter (after expiration of that reduced term of Bennett's lease and within the reduced term of Greenwoods' lease) the latter duly demanded possession from Bennett. That is, after the expiration of the 6 months' notice of reduction of the Bennett term, the tenant in chief (of the whole building within the terms of his lease) demanded possession of Bennett at a time when their leasehold interest existed and the right of possession had not returned to the owners of the

fee and was not merged in the purchaser reversion.

The initial notice being efficacious to terminate Bennett's lease, the right of possession of the property after expiration of the 6 months' notice thereof, or time given by the Greenwoods for vacation by Bennett, was thereafter in the Greenwoods, and not in the Nabers.

In Dwine v. Brown, 35 Ala. 596, it was held that purchaser from a lessor cannot maintain the action of unlawful detainer, on account of mere holding over after the termination of the lease pending which the purchase was made, for the reason that the purchaser's title may not (in such action) be made the subject of inquiry in the assertion of the "acquisition of the title" by plaintiff and its denial by the defendant. This rule was adhered to in Cooper v. Gambill, 146 Ala. 184, 187, 40 South. 827; Shepherd v. Parker, 157 Ala. 493, 47 South. 1027. However, in Hill v. Harris, 179 Ala. 614, 619, 60 South. 917, the foregoing authorities are cited and considered, and the observation is made that, "if the tenant has attorned to him, this rule, of course, has no application." Under last authority the judgment of the circuit court is reversed, and the case is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

On Rehearing.

THOMAS, J. It is urged that the contract notice of the desire of the landlord to reduce the term of Bennett's lease, after "the first year thereof upon 6 months' notice in writing given the said lessee," was insufficient. The notice given to Bennett of such desire was signed "Henry Greenwood, Arthur Greenwood, by S. Greenwood." The statutory notice to quit was signed, and the suit instituted by all of the Greenwoods.

This court has declared that where real property held by tenants in common is mortgaged and foreclosed, the demand for possession by the purchaser, and the refusal which will destroy the right of redemption, must have been made upon each of the tenants in common. Harden v. Collins, 138 Ala. 399, 35 South. 357, 100 Am. St. Rep. 42. The reason for this ruling is that under the statute either of such tenants may exercise the right of redemption. Hale v. Kinnaird, 200 Ala. 596, 599, 76 South. 954. Such authorities are not analogous to the instant question.

[10] In the language of the old law, the nature of joint tenancy is where the owners hold "per my et per tout." That is to say, for the purpose of tenure and survivorship each is the holder of the whole; for the purpose of alienation, each has his own share, which is presumed to be equal. 5 M. A. L. p. 245, § 311; 2 Black. Comm. p. 180; Williams, Real Property (6th Ed.) p. 132.

What then is the common-law rule of a notice sufficient to reduce or terminate a tenancy or to be sufficient as a notice to quit? The case of Doe d. Aslin v. Summersett (K. B. 1830) 1 Barn. & Adol. 135, Lord Tenterden, C. J., held that a notice to quit, signed by one of several joint tenants *on behalf of others,* is sufficient to determine a tenancy from year to year, and that the case of Right Doe d. Fisher v. Cuthell, (1804) 5 East Rep. 491, where the notice was to "determine the lease," was distinguished as follows:

"There a lease for 21 years from Adams to Cuthell, was determinable at the end of 14 years, upon 6 months' notice in writing by landlord or tenant, their respective heirs, executors, etc., *under his or their hands.* Adams made Fisher, Nash, and Hyrons executors, and Fisher and Nash only gave the notice. The case was put, not upon the ground that they were executors, but upon the the ground that they were joint tenants, and that, circumstanced as that case was, where a mode specifically pointed out was to be pursued in order to put an end to a subsisting term, and that mode required the concurrence of all the joint tenants, a notice by some of the joint tenants only would *have no operation;* but that concludes nothing upon a case in which a notice by one only of the joint tenants would clearly operate upon his share, and where the confining it to that share might work great injustice to the defendant."

This rule is supported by notice to quit in Alford v. Vickery, Carrington & Marshman's Eng. Nisi Prius Rep. 280. A report of the later cases stated that it is cited in Wood on Landlord and Tenant, §§ 445, 539, and Taylor on Landlord, § 479. 15 Eng Ruling Cases, 662, 666. Mr. Freeman cites Doe d. Aslin v. Summersett, supra, and says: "There seems to be but little doubt of its doctrine in England." Freeman's Cotenancy, § 180; Doe d. Kindersley v. Hughes, 7 Mees. & W. 139, a notice to "determine the tenancy." See 16 R. C. L. p. 1175, § 697, for cases to the like effect.

The announcement of Lord Ellenborough of a notice to determine the tenancy, contained in Right Doe d. Fisher v. Cuthell, 5 East's Rep. 491, 497, was quoted with approval in Pickard v. Perley, 45 N. H. 188, 86 Am. Dec. 153 (where the subject was a notice to quit), without noting that the decision rested upon the requirement of the lease that the notice of the landlord to reduce the term be in writing "under his or their hands."

Mr. Freeman explains that while Right Doe d. Fisher v. Cuthell, supra, seemed to sustain a different conclusion from that announced in Doe d. Aslin v. Summersett,

supra, it* was by reason of the peculiar phraseology of the lease; that termination by either party was required to be upon notice in writing, *under his or their respective hands.* Hence it was held that a notice by only two of the three lessors was not under the *hands of all,* as the lease required it should be. The subject is concluded by Mr. Freeman as follows:

"Whether a notice by one or more lessors shall or shall not be held to terminate the tenancy between the lessee and the lessor who did not join in giving *or authorizing such notice* [italics supplied], it is, in either event, clear that neither cotenant has, by virtue of the ordinary relations of cotenants, any authority to act as agent of his companions, in giving such notice. If the notice has any effect over the moieties of the owners who do not unite in it, this effect arises, not from any presumed relation between the cotenant authorizing one to act as agent for the other, but from the nature of the leasing, and from the natural and reasonable presumption that the lessee never contemplated being a lessee of an undivided interest." Freeman on Cotenancy and Partition (2d Ed.) § 180, p. 260.

Mr. Taylor says of the sufficiency of such notice that—

"When two or more persons are interested in the premises as tenants in common, notice by one, on behalf of himself and his cotenants, will be valid only so far as his own share is concerned, unless he was acting at the time under the authority of the other parties mentioned in the notice (or unless the act is ratified before the notice becomes operative). But where they are interested as joint tenants, the notice need not be signed by all; for the act of one is supposed to be for the benefit of the others, and so is sufficient. The lessee holds of all so long as he and all shall please; and as soon as any one of the joint tenants gives notice to quit, he, in fact, puts an end to the tenancy." Taylor's Landlord and Tenant (2d Ed.) § 479, p. 66.

The subject is disposed of by Mr. Wade (Law of Notice [2d Ed.] § 616, pp. 352–353) as follows:

"As to the effect of notice from one or two or more joint lessors or lessees, or from any number less than all, upon the opposite party, there is some conflict, but the weight of authority seems to be that such notice must come, either directly or indirectly, from all, in order to be binding upon the party notified, as to the entire interest represented by the opposite parties. * * * And tenants in common, whether lessors or lessees, would possess no greater authority with respect to the interests of each other than would joint tenants."

See, also, 1 Washburn on Real Property, § 809; 24 Cyc. (2), p. 1332.

In his recent work on Landlord and Tenant (vol. 2, § 198, p. 1438), Mr. Tiffany said of the notice required to be given to terminate:

"When a lease is made by two or more joint tenants, notice by one, on behalf of all, is sufficient to terminate the tenancy as to his own share, and, likewise, according to the English decisions, as to that of the others, unless the lease expressly requires the notice to be given by all. In the case of a lease by tenants in common likewise, each may give a notice, good as to his undivided share, and presumably in England the rule, applied in the case of a lease by joint tenants, that each may give a notice in behalf of others, would be applied in the case of a lease by tenants in common. In one case in this country, however, it has been decided that one tenant in common cannot give a notice in behalf of the others (Pickard v. Perley, 45 N. H. 188 [86 Am. Dec. 153]) and there is a dictum in that case to the effect that one joint tenant cannot do so."

[11] There are several questions underlying such proceedings, on which the courts are generally agreed, viz.: (1) Options or right to terminate a lease must be exercised within the terms of the contract, and the expressed intentions of the parties; (2) by the party for whose benefit the same is reserved, or a successor in interest who is entitled to exercise the right, as shown by the fair intention of the parties collected from the terms of the instrument; and (3) upon compliance with the provisions of the lease reserving the right. Ann. Cas. 1916B, 306, 313, note; Vinyard v. Repub. I. & S. Co., 205 Ala. 269, 87 South. 552.

[12] The fact that joint tenancy, in its former consequences, does not obtain in this state, and all who are thus provided for by deed are made tenants in common (Dunn v. Bank of Mobile, 2 Ala. 156; Hill v. Jones, 65 Ala. 220; Code 1907, § 5203), does not contribute to a different result than the announcement by us on original hearing; such is the effect of a reasonable notice to determine the tenancy when the specific terms of the lease in question and notice given are considered together. The contract for the lease of the premises to appellee was that of an entirety of interest. The nature and entirety of that tenancy is well defined by the parties to the lease; it was for the "storehouse and premises known as No. 411 No. Twentieth street, about 17 feet by 75 feet in size," to be used "for occupancy by him [Angelo Bennett] as a fruit stand and general store, *and not otherwise,*" and the landlord reserved the right to terminate that tenancy "at any time after the expiration of the first year thereof, upon six months' notice in writing given the said lessees, upon a bona fide sale of said premises having been made by the landlord."

Thus was the whole title and the possession of the specific premises treated as an entirety for the purposes declared, and subject to the right imposed by the lessor upon the premises for the benefit of, and not only to enhance its value, but that of his adjacent or separate space or "stores" in the same building.

[13] The general rule of such right, options, and notices thereof is that it is not strictly construed, and the notice is sufficient if the intention of the parties to exercise the right or option is fairly communicated. The use of the words "our lease," or similar words, in the notice, has been held sufficient to· show that it is designed as an exercise of the reserved right or option reserved by the lease. Ann. Cas. 1916B, 312 (4).

The case of McNally v. Leach (Mo. App.) 205 S. W. 82 (notice to quit), following the rule applied in Pickard v. Perley, 45 N. H. 188, 86 Am. Dec. 153 (a notice to quit), adverts to the fact that the statute of Missouri requires "the person. having the legal right to the possession to give notice in writing," and that decision is rested on the requirement of the sufficiency of the statutory notice to quit. The justice said:

"Under our statute, as in the New Hampshire case [Pickard v. Perley, supra, Compiled Statutes, c. 222, §§ 1, 6], we think it is clear that the notice of the termination of the tenancy and the demand for the possession must come at the proper time from both of these tenants in common in the ownership of the property."

Such is not the statutory requirement in this jurisdiction of a notice to .terminate and determine a tenancy.

The difference between a notice to determine a tenancy—to terminate—and a notice to quit was adverted to in McDevitt v. Lambert, 80 Ala. 536, 2 South. 438, by Mr. Chief Justice Stone, saying of the notice to terminate that "we have, in this state, no statute bearing on the question," and that where "the contract of lease under which defendant entered is silent on the subject," reference must be had to the textbooks and general authorities for what a "reasonable notice in such cases" is. Ross v. Gray Eagle Coal Co., 155 Ala. 250, 46 South. 564; Speer v. Smoot, 156 Ala. 456, 47 South. 256; Eddins v. Galloway, 205 Ala. 361, 87 South. 557; Johnson v. Blocton-Cahaba Coal Co., 205 Ala. 373, 87 South. 559. The terms of the tenancy dealt with by Judge Stone were that either party could put an end to the lease by giving proper notice. The Chief Justice indicated that section 3697, Code of 1876 (section 4263 of the Code of 1907) made provision for a notice to quit after the due termination of the tenancy. In the instant case, the evidence shows that the statutory notice to quit (under section 4263 of Code) was signed by all of the Greenwoods.

Adverting to the instant contract notice of date of October 11, 1919, to "determine the tenancy"—terminate tenancy—its reference was specific as to the buildings known as Nos. 409, 411, and 411½, the provisions of the' lease, "our lease," pertaining thereto (as affecting defendant in court below and as applied to the premises designated as No. 411), in which the "landlord reserved the right to terminate this lease," etc., on notice; the notification that the "purchaser of said property desired to exercise the option of reducing said lease, gives notice to you [Mr. Angelo Bennett] through us of their and our desire to reduce said ·term" and concludes with the unequivocal statement that notice was thereby given that the "term of said lease is reduced to six months from the date of this notice." The evidence shows that there was full authority on the part of the Greenwoods signing the contract notice to act in that behalf· for the other Greenwoods not signing the same. That they all duly joined the statutory demand for immediate possession, and were parties plaintiff to the suit for possession, is supported by the record and evidence.

[14] The rule of the common law as to the sufficiency of the contract notice (in the absence of a statute to the contrary in the state) obtains in this jurisdiction, and the notice given was sufficient to reduce the terms as indicated.

The application for rehearing is overruled.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.