81 So.2d 352

### A. C. MOORE et al.

### v.

### William M. SHIPP.

4 Div. 755.

Supreme Court of Alabama.

June 16, 1955.

Albert Patterson, Phenix City, for appellants.

Smith & Smith, Phenix City, for appellee.

LAWSON, Justice.

This is an appeal from a final decree of the circuit court of Russell County, in equity.

We will undertake to relate the events which led up to this litigation. We hope they are stated correctly, but we cannot be sure because the record before us fails to portray a clear picture of those events.

In the early part of 1939 John D. Burkes, a resident of Phenix City, Russell County, Alabama, became interested in the purchase of some land which was owned by William M. Shipp, which land was situate in or near Phenix City and which, for the purposes of this opinion, we will treat as consisting of two adjoining tracts, Tract A containing sixteen acres and Tract B containing four acres. Burkes was interested in the purchase of Tract A.

Apparently after some negotiations it was agreed between Burkes and Shipp that the latter would sell Tract A to the former for the sum of $3,800. Apparently Shipp demanded cash, and Burkes being without funds made arrangements to acquire the purchase money from two sources, the Jefferson Standard Life Insurance Company, of Greensboro, North Carolina, and Mrs. Irene M. Peed, of Butler, Georgia.

The record shows that on May 8, 1939, although there had been no conveyance from Shipp to Burkes as of that time, the latter signed a mortgage purporting to convey Tracts A and B to the Jefferson Standard Life Insurance Company, hereinafter sometimes referred to as Jefferson, to secure an indebtedness of $2,500, together with interest, which indebtedness was evidenced by a promissory note of the same date. Actually there is nothing in the description used in this mortgage indicating that the land therein conveyed was considered as being divided into two tracts.

We understand the record to show that the mortgage which was signed by Burkes on May 8, 1939, was not delivered until May 20, 1939, when the loan which Burkes obtained from Jefferson was closed and on which day the following other events transpired:

1. Shipp signed and delivered to Burkes a warranty deed conveying Tracts A and B for a recited consideration of $3,800.

2. Burkes executed and delivered to Shipp a deed to Tract B. This deed from Burkes to Shipp contained the following provision: "It is expressly understood and agreed that this deed is given subject to that certain mortgage executed by John D. Burkes and wife, Leona Burkes to Jefferson Standard Life Insurance Company on the 8th day of May, 1939."

3. Burkes executed and delivered to Mrs. Irene M. Peed a mortgage conveying Tract A, along with other real estate, but not including Tract B, which mortgage was given to secure the payment of an indebtedness amounting to $1,400, together with interest. The mortgage to Mrs. Peed as to Tract A was made subject to the Jefferson mortgage.

Thereafter, on January 2, 1940, the mortgage given by Burkes to Mrs. Peed was foreclosed and at the foreclosure sale Theo J. McGee became the purchaser and a foreclosure deed was executed to him by the auctioneer under the power contained in the mortgage.

On June 2, 1942, William E. Shipp by quitclaim deed conveyed any interest he might have in Tract A to I. E. Moore for a recited consideration of $5. As far as we can determine, Shipp had no interest, legal or equitable, in Tract A.

On June 4, 1942, McGee deeded Tract A to I. E. Moore. The deed from McGee to Moore reads in pertinent part as follows:

"* * * That for and in consideration of Ten Dollars ($10.00) Dollars (sic) and other good and valuable consideration, to the undersigned Grantors, Theo J. McGee, and his wife, Alma T. McGee, in hand paid by I. E. Moore, the receipt whereof is hereby acknowledged by us, the said Theo J. McGee and wife, Alma T. McGee, do grant, bargain, sell and convey to the said I. E. Moore, the following described real estate, to wit: * * *."

Following the description in the said deed from McGee to Moore appears the following language:

"The above described property is conveyed subject to that certain mortgage executed by John D. Burkes and wife, Leona W. Burkes, to Jefferson Standard Life Insurance Company of Greensboro, N. C., on the 8th day of May, 1939, to secure an indebtedness of $2500.00, which mortgage is recorded in the office of the Judge of Probate of Russell County, Alabama, in Phenix City, Alabama, in Mortgage Record 24, at page 223, which indebtedness, or the balance thereof, is assumed by I. E. Moore, *and which indebtedness, or the balance thereof, I. E. Moore agrees to pay off and fully discharge subject to the terms and conditions set forth and contained in said mortgage and note, notes* (sic) *evidencing said indebtedness.*" (Emphasis supplied.)

On June 22, 1949, Jefferson assigned and transferred to A. C. Moore, a brother of I. E. Moore, the note and mortgage which

Burkes signed on May 8, 1939. The mortgage, as heretofore shown, covered Tracts A and B.

Thereafter, on July 12, 1949, A. C. Moore, for a recited consideration of $10 signed and delivered a quitclaim deed to his brother, I. E. Moore, covering all the right, title and interest which he acquired in Tract A as assignee and transferee of the Jefferson mortgage, that is, the mortgage which bears date of May 8, 1939.

In the early part of June, 1950, A. C. Moore, as assigneé of the Jefferson mortgage and of the indebtedness secured thereby, gave notice by publication that Tract B would be sold at foreclosure sale on July 7, 1950, for the purpose of satisfying the entire outstanding indebtedness secured by the Jefferson mortgage.

Within a week or two after the publication of the notice of the mortgage foreclosure sale, the original bill in this case was filed by William M. Shipp against A. C. Moore and I. E. Moore. Among other things, the bill prayed for injunctive relief, temporary and permanent, as to the foreclosure sale advertised for July 7, 1950. After notice and hearing, the trial court ordered and the register issued an injunction restraining respondents from foreclosing the Jefferson mortgage "where the same affects the property of the said William M. Shipp, described as follows," etc., until the further orders of the court. The land described in the writ of injunction was that which we have designated Tract B. There was no effort made to discharge or dissolve the temporary injunction 'and it was not attacked in any other manner and we are not concerned here with the' action of the trial court in that regard.

The original bill referred to the transactions to which we have alluded in the opening paragraphs of this opinion and alleged, among other things, that the sum of $1,037.50 remained unpaid on the debt secured by the mortgage executed by Burkes to Jefferson at the time that mortgage was assigned and transferred to A.

C. Moore; that on May 20, 1939, Burkes and wife agreed to hold Shipp "free from the indebtedness due" by Burkes to Jefferson, which indebtedness was secured by Tract B as well as Tract A; that the respondents I. E. Moore and A. C. Moore are so related that the court "may inquire into and require them on account of such relationship to state unto the court any transactions wherein any trust or agreement is made affecting the interests of third persons"; that the respondent A. C. Moore, in conjunction with or at the instance of the respondent I. E. Moore, took the assignment of the note and mortgage executed by Burkes to Jefferson under the belief that "they" were securing a first mortgage on Tract B; that complainant, Shipp, assessed Tract B for taxes and paid the taxes thereon for ten years immediately prior to the filing of the bill; that there are no improvements on that tract, but that Shipp has been in possession thereof claiming it as his own "under the deed aforesaid, executed by the said John D. Burkes and wife, Leona Burkes"; that "if the said A. C. Moore is entitled to repay [to be repaid] any further money on account of the mortgage executed by John D. Burkes and wife, Leona Burkes to the Jefferson Standard Life Insurance Company on May 8, 1939, that it is due by the said I. E. Moore in accordance with his agreement with the said Theo J. McGee and that the said I. E. Moore and A. C. Moore have full knowledge thereof."

Aside from prayer for process and the prayer for injunctive relief, the bill prayed:

1. "That upon the final hearing of this cause that the Court will adjudicate and determine that the said A. C. Moore and I. E. Moore have no interest in or claim to the lands of the Complainant described as follows:" (Tract B)

2. "That the Court will make such orders and decrees as may be necessary and proper to remove the cloud upon the title of the lands of the Complainant and described in this Bill of Complaint [Tract B], as such."

3. General relief.

On July 10, 1950, the respondents filed (1) a motion to strike or dismiss the bill as to the respondent A. C. Moore, (2) a demurrer, and (3) an answer. As far as we can determine, the trial court never ruled on the motion or demurrer and we will forego any discussion of them. The answer of the respondents denied all of the averments of the bill which were material to the relief therein sought and we see no occasion to set out or summarize the averments of the answer.

Approximately one year later, on July 17, 1951, the respondents amended their answer and made it a cross bill. The amendment avers the execution of the mortgage by Burkes to Jefferson and that on June 22, 1949, it was duly and legally transferred by Jefferson "to the respondent A. C. Moore for a valuable consideration and that the said A. C. Moore is now the owner of the mortgage, notes and indebtedness secured thereby and that default has been made in the payment of the indebtedness mentioned therein and default has continued to the present time and that same is now past due and unpaid and this Respondent avers that he is entitled to foreclose said mortgage and he avers that according to the provisions of said mortgage he is authorized to foreclose same and is entitled to a reasonable attorney's fee and that he claims the benefit of all the provisions in said mortgage and avers that said property is described as follows:" (Then follows a description of Tract B with no reference being made to Tract A.)

Aside from the prayer for process the cross bill prays:

"(b) That upon final hearing of the pleadings and proof in this case this Court will enter an order allowing this Respondent and Cross Complainant to foreclose this said mortgage according to the terms thereof and collect and apply the proceeds of said sale to the indebtedness and will allow a reasonable Attorney's fee for services of Attorney in this matter.

"(c) Or that this Court will authorize and direct the Register of this Court to properly foreclose this mortgage according to the decree and provisions in the said mortgage that the indebtedness may be paid in full and that an attorney's fee be paid to his attorney and that the costs and other legal charges be collected out of the proceeds thereof.

"(d) That this Court will litigate, hear and determine all issues that equity may be done and that all parties be required to do equity as this Respondent and Cross-Complainant here offers to do equity and prays that all other parties be required to do likewise.

"This this (sic) Respondent and Cross-Complainant prays for such other, general and additional relief that the premises may justify and in equity and good conscience may seem just and proper unto the Court."

Some of the language used in the amendment to which we referred above would indicate that it was filed solely by the respondent A. C. Moore. Yet the caption employed in the amendment shows A. C. Moore and I. E. Moore as respondents and the opening paragraph of the amendment reads: "Comes now the Respondents in the above styled cause and refiles their answer heretofore filed and with the permission of the Court amends said answer by way of cross bill, as follows: * * *." Certain it is that I. E. Moore was not made a cross respondent to the cross bill. As far as we can determine the cross bill was never answered.

The decree here under attack was rendered on March 27, 1953, after a hearing held on December 3, 1952, at which several witnesses were examined orally before the trial court.

The first two paragraphs of the "Decree" read:

"This cause coming on to be heard is submitted on the pleadings and proof as noted by the Register. The Com-

plainant filed his bill of complaint seeking an injunction, to enjoin and restrain the sale of certain lands described in his bill of complaint and to quiet the title to the lands shown in said bill to belong to him. The bill of complaint was amended by bringing in John D. Burkes, Theo J. McGee and Mrs. Alma T. McGee as parties Respondent.

"The Court finds from the pleadings and proof the following:"

The foregoing is followed by eight numbered paragraphs. Paragraphs 1, 2, 3, 6, 7 and 8 refer to matters about which there was no dispute and to which we have heretofore referred.

Paragraphs 4 and 5 read as follows:

"4. On May 21st, 1942, I. E. Moore entered into a contract agreeing to purchase all of Lots 23, 24, 25, 26 and 26-A [Tracts A and B]. The purchase price was to be $3,650.00 and property to be conveyed subject to loan by John D. Burkes and wife, Leona Burkes, from Jefferson Standard Life Insurance Company, and that the balance on the mortgage debt to Jefferson Standard Life Insurance Company of $2,050.00, principal with interest at 6% per annum, from May 8th, 1942. The balance of the purchase price between amount of mortgage and purchase price to be paid in 10 days. It also provided that Moore was to pay off and discharge the balance due Jefferson Standard Life Insurance Company, taxes to be pro rata. This was signed by I. E. Moore and McGee.

"5. William M. Shipp and wife, Annie Houston Shipp on June 2, 1942, executed to I. E. Moore a Quit Claim deed to the lands for a consideration of $5.00, the same conveying all the lands except South half of Lot 23, and South West Quarter of Lot 24, claimed by Shipp [Tract B]. The consideration therefor being that the said I. E. Moore would pay the mortgage debt due by the said John Burkes' mortgage to Jefferson Standard Life Insurance Company."

We quote now the paragraphs of the decree immediately following those paragraphs which were numbered:

"The recitals in the deed from Theo J. McGee and wife Alma T. McGee shows that Mrs. Irene M. Peed held a second mortgage on part of the lands, and said second mortgage was in default and evidently to protect her interest, the second mortgage was foreclosed, the property bid in by Theo J. McGee.

"A. C. Moore is entitled to have his debt, which was transferred to him from Jefferson Standard Life Insurance Company satisfied in full, as to this debt. I. E. Moore is bound by his contract shown in paragraph 6 [paragraph 4] to pay said mortgage debt now held by A. C. Moore.

"And as a matter of law, the court is of the opinion that I. E. Moore became the principal debtor and that it was his obligation to see that the mortgage of John D. Burkes and wife, Leona Burkes, to Jefferson Standard Life Insurance Company, and later transferred to A. C. Moore should be paid in full.

"See: Tennessee Valley Bank, et al. v. Sewell, [214 Ala. 362], 107 So. 834.

"See also, American Digest, Volume 16, Mortgage, ⬤283(1).

"The payment of the Jefferson Standard mortgage now held by A. C. Moore is a part of the purchase money for the land described in the deed shown in pa. 6 [deed from McGee to I. E. Moore under date of June 4, 1942].

"*The Court is of the opinion that the Complainant is entitled to the relief prayed for in his bill of complaint, as amended.*" (Italics ours.)

We have a long line of cases in this state which hold, in effect, that the language italicized above is not a decree but is merely expressive of the opinion of the court. Thompson v. Maddux, 105 Ala. 326, 16 So. 885; Hill v. Hill, 211 Ala. 293, 100 So. 340; Lyall v. Lyall, 250 Ala. 635, 35 So.2d 550; Weems v. Weems, 253 Ala. 205, 43 So.2d 397, and cases cited.

Immediately after the language which we have italicized appears the following: "It is further ordered, adjudged and decreed by the court as follows:" which language is followed by four paragraphs, (a), (b), (c), and (d).

In paragraph (a) the court decreed that I. E. Moore is indebted to A. C. Moore in the sum of $1,258.65, together with interest from the date of the decree; that that sum is the amount due on the mortgage given by Burkes to Jefferson, which mortgage along with the debt which it secured was later assigned and transferred to A. C. Moore; that I. E. Moore pay said sum to A. C. Moore within thirty days from the date of the decree; that upon the payment of said sum by I. E. Moore to A. C. Moore, the latter satisfy and cancel the Jefferson mortgage of record.

In paragraph (b) the court decreed that in the event I. E. Moore fails to comply with the terms of paragraph (a), the register advertise *Tract A* "for sale, once a week for three successive weeks in the Phenix-Girard Journal, a newspaper published in Russell County, Alabama, and having general circulation herein, the lands will be sold at public outcry for cash, to the highest bidder before the Court House door of Russell County at Phenix City, Alabama, within the legal hours of sale not less than thirty days from the date of the first advertisement, and report said sale of said lands to the court for confirmation, * * *."

In paragraph (c) it is decreed that out of the proceeds of any sale that might be held as provided in paragraph (b), the register must first pay all costs that have accrued in the case, then satisfy "the mort-gage debt to the said A. C. Moore," with the remainder of the proceeds received from the sale, if any, paid over to I. E. Moore.

Paragraph (d) reads: "All matters not herein finally disposed of are retained for the further orders of the court."

As shown above, the statement in the decree to the effect that the court is of the opinion that complainant is entitled to the relief prayed for in his amended bill is not a decree and hence, standing alone, would not even support an appeal. Weems v. Weems, supra.

The only effective features of the "Decree" are found in paragraphs (a), (b) and (c). As to whether or not the trial court entertained the view that the relief therein provided was within the issues raised by the amended bill of complaint and the answer thereto or whether the court considered that such relief could be decreed under the cross bill, we are not advised. As for the cross bill, we have heretofore pointed out that Shipp did not file an answer to it and certainly I. E. Moore and A. C. Moore were not adversary parties thereunder. Both of the Moores were cross complainants and hence neither of them filed an answer to the cross bill.

But in any event we are clear to the conclusion that the terms and provisions of paragraphs (a), (b) and (c) of the decree are completely beyond the issues raised by the pleadings. The case started out as being one wherein Shipp sought to enjoin the sale of Tract B, which had been advertised for sale for the purpose of applying the proceeds of the sale to the payment of the Jefferson mortgage and wherein Shipp sought to have a cloud removed from his title to Tract B. The cross bill sought to have Tract B sold at mortgage foreclosure sale. It certainly did not seek to have Tract A sold, and yet that is what the court has decreed.

Cross complainant I. E. Moore has no mortgage to foreclose. Cross complainant A. C. Moore has executed a conveyance

releasing Tract A as security for the debt of Burkes, which debt was assigned to A. C. Moore by Jefferson. A. C. Moore has not sought to have that conveyance set aside and to have Tract A sold at mortgage foreclosure sale. Nor did the original bill seek that relief, yet such is the effect of the decree of the trial court.

In paragraphs (a), (b) and (c) the trial court has arranged the parties in this litigation so as to make I. E. Moore and A. C. Moore adversaries, when the pleadings do not place them in that position, and in those paragraphs of the decree the court has ordered done acts which are beyond the scope of the issues presented. Bain v. Howell, 252 Ala. 458, 41 So.2d 588; Majors v. Killian, 230 Ala. 531, 162 So. 289; Jackson Realty Co. v. Yeatman, 219 Ala. 3, 121 So. 415.

If we understand the complainant's amended bill correctly, aside from injunctive relief it sought to have the court decree that Tract B was not subject to being sold to satisfy the Jefferson mortgage because of the provisions contained in the deed from McGee to I. E. Moore and because the complainant, Shipp, executed a quitclaim deed to I. E. Moore as to Tract A.

■ Perhaps the effect of paragraphs (a), (b) and (c) is to give Shipp that relief. But we are clear to the conclusion that under the pleadings and evidence in this case, the orders of the trial court contained in those paragraphs of the decree cannot be upheld.

We refrain from expressing any view as to the merit of the position we understand Shipp to take relative to Tract B. The record before us does not contain all of the evidence which was before the trial court; for example, the contract to which the trial court refers in paragraph 4 of the decree was introduced in evidence. It is not in this record. Moreover, we feel that much evidence which can be adduced on another trial which bears on the rights of the parties was not presented on the trial below.

We are of the opinion that the decree of the trial court should be reversed and the cause remanded. It is so ordered.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.