97 So.2d 584

J. Olin GAINES

v.

A. E. MILNER.

8 Div. 862.

Supreme Court of Alabama.

Oct. 24, 1957.

448

George Murphy, Gadsden, for appellant.

H. G. Bailey, Boaz, for appellee.

LAWSON, Justice.

The question for decision in this case is the extent of the interest, if any, which appellant has in the suit property, the fee simple title to which is in the appellee.

The appellant, the respondent below, contended that he had a valid lease which gave him the right to the exclusive possession of the suit property. The written instrument which appellant contends is a lease was executed by him and his brother, as parties of the second part, and by one Helms, as party of the first part, on November 8, 1945. Appellant has succeeded to the rights of his brother in that instrument and we may sometimes hereinafter treat the appellant as being the only party of the second part in that instrument. Helms is one of appellee's predecessors in title. The instrument of November 8, 1945, was on record at the time appellee secured his deed from a Mrs. Wharton in March of 1953. Appellee took the position that the said instrument was not a lease but a license, which did not in any wise affect him. The trial court on October 17, 1955, decreed "that the Respondent, J. Olin Gaines, has a valid lease on said property for the exclusive sale of his petroleum products during the term of the recorded lease expiring November 7, 1955, but has no further right, title or interest in said property by virtue of said lease agreement."

From that decree the respondent below, J. Olin Gaines, has appealed to this court. The complainant, A. E. Milner, does not agree with all of the provisions of the decree of the trial court but he has not taken a cross-appeal or made cross-assignments of error.

The written instrument which was entered into by appellant and Helms on November 8, 1945, which we will sometimes refer to hereafter as the Helms lease, reads in material parts as follows:

"State of Alabama |
Marshall County. |

"This *Lease* made this 8th day of November, 1945 by and between B. C. Helms, party of the first part; and J. O. Gaines, and W. Otis Gaines, parties of the second part:

"Witnesseth

"That the party of the first part does hereby RENT AND LEASE unto the parties of the second part, the following described premises in the City of Boaz, Ala., viz.:

Lots Numbers 10, 12, 14, 16 and 18 in Block Two (2) of the Wells-Oliver-Carroll Addition to Boaz, Alabama, as is shown upon record in the Probate Office of Marshall County, Alabama; said plat being made by E. H. Lee, C. E. and Surveyor on Feb. 8, 1945; wherein there is now a gasoline service station and grocery store;

for occupation by them as tenants and not otherwise, for and during term of ten years, from the 8th day of November, 1945 to the 7th day of November, 1955; and covenants to keep the parties of the second part, in possession of the premises during said term. The parties of the second part also retains an option to lease the above described premises for ten additional years at $10.00 per year payable in advance.

"The Consideration for this lease has been paid in full under the terms and conditions of a certain indebtedness due said parties of the second part by party of the first part.

"Party of the second part for and in consideration of the above premises as stated above, agrees that they will deliver to party of the first part the products, or petroleum products (gasoline, greases, etc.) at all reasonable times, at posted tank-wagon prices for cash, and keep parties of the first part stocked with said products, acts of Providence and other things beyond their control being taken into consideration.

\*    \*    \*    \*    \*    \*

"It Is Also Further Understood And Agreed that the party of the first part reserves the right to show and advertise the premises herein leased for sale during the term of this lease, and he also agrees that he will always explain the terms and conditions of this lease in connection with the sale of said property.

"This mutual agreement executed by the parties hereunto in duplicate on this 8th day of November 1945."

The general rule of construction is that a written lease is construed according to the intention of the parties thereto, to be gathered from the whole instrument, rather than from a single clause or from several clauses. But where the language of the instrument is ambiguous, circumstances surrounding its execution as well as the subsequent acts of the parties may be considered in ascertaining the intention of the parties. Greenwood v. Bennett, 208 Ala. 680, 95 So. 159, and cases cited; Irwin v. Baggett, 231 Ala. 324, 164 So. 745. See Darling Shop of Birmingham v. Nelson Realty Co., 255 Ala. 586, 52 So.2d 211.

We think the inclusion in the Helms lease of the clause relating to the furnishing of gasoline to Helms by appellant renders the entire instrument so ambiguous as to justify a consideration of the circumstances attending the execution of the instrument and the conduct of the parties thereunder, as a means of determining the intention of the parties. There is nothing in the instrument which even suggests why such a clause was inserted or the effect, if any, it was intended to have upon the rights of the parties. The inclusion of that clause is at least suggestive of the idea that the parties intended for appellant to furnish gasoline products to Helms at the filling station on the premises, although other language in the "lease" says in effect that the premises were rented and leased to appellant for his occupation as a tenant and for no other purpose.

We will attempt to summarize as briefly as possible the circumstances surrounding

the execution of the so-called Helms lease and the conduct of the parties and those holding under them subsequent to the time of execution which we think shed light upon the question at hand. We hope those matters are fairly stated hereafter, but we cannot be sure because the record before us falls far short of depicting a clear or complete picture of those events.

For some months prior to November, 1945, the suit property was owned by the appellant, J. O. Gaines, and his brother, W. O. Gaines. During that time the property was in the possession of Helms under a month-to-month lease. Helms paid $50 per month as rent. The Gaines brothers had installed filling station equipment on the premises, including pumps, tanks, compressor, signs and sign poles. The Gaines brothers were at that time engaged in the business of distributing Cities Service petroleum products at wholesale under the name of Etowah Oil Company and Helms seems to have been one of their customers.

On or about November 8, 1945, the appellant and his brother conveyed the suit property to Helms. At the same time it appears that Helms executed a purchase money mortgage to the Gaines brothers and the parties entered into the agreement which we have referred to above as the Helms lease. Helms remained in possession of the property after the execution of the "lease" and continued to operate the filling station where he sold Cities Service products furnished him by the Gaines brothers.

Helms, on or about December 1, 1947, sold the suit property to one McKenzie, who paid off the mortgage held by the Gaines brothers. At the time of his purchase McKenzie signed an instrument addressed "To Whom it May Concern" wherein he stated that he was buying the property "subject to the present lease now being held by J. O. Gaines and W. Otis Gaines" and that he would "continue to abide by that agreement according to its terms and conditions as set forth therein."

McKenzie went into possession of the property, including the filling station, and for several months sold petroleum products distributed by Etowah Oil Company. McKenzie got behind in his payments for the products so furnished and Etowah Oil Company discontinued deliveries to him. Thereupon McKenzie had some or all of the Gaines filling station equipment removed from the premises and began to sell Shell products presumably from equipment furnished by a Shell distributor. On March 21, 1949, the Gaines brothers filed suit in the circuit court of Marshall County, in equity, against McKenzie wherein they prayed that he be enjoined from selling any petroleum products "other than that described in the lease" and that he be enjoined from removing, destroying or in any way interfering with the complainants' equipment. On April 24, 1950, the circuit court of Marshall County, in equity, entered a final decree to the effect that the Helms lease was binding on McKenzie, who was enjoined from interfering with the complainants' equipment and from selling any petroleum products "except those products furnished by complainants under the terms of said lease." We pause at this point to observe that the Helms lease did not in its language expressly obligate Helms to purchase or use the products distributed by the Gaines brothers. According to the provisions of the lease, the obligation was on the latter to furnish such products to Helms. It is apparent that the court's conclusion that the parties intended that Helms was bound to use only such petroleum products as were distributed by the Gaines brothers was based on the testimony of appellant to the effect that the lease was entered into for that purpose alone and that the property would not have been sold to Helms except for the understanding that the filling station thereon was to be used by the owner-lessor to dispense Cities Service products distributed by Etowah Oil Company.

McKenzie did not offer any testimony in defense of the suit against him. In fact, the final decree in that litigation was ren-

dered approximately six months after McKenzie had sold the suit property and had surrendered possession thereof to one Haygood. The deed from McKenzie to Haygood contained no reference to the Helms lease and Haygood did not have actual notice or knowledge of that lease at the time he purchased the suit property, nor was he advised at that time that appellant claimed any interest or right therein.

Negotiations between Haygood and the appellant, who had acquired the interest of his brother in Etowah Oil Company, culminated in the execution on April 12; 1951, of a written agreement between the appellant, doing business as Etowah Oil Company, and Haygood, which was never recorded. In substance that agreement provided that the appellant rented the suit property from Haygood for a period of one year at a rental of $50 per month; that appellant owned the gasoline pumps and underground tanks and was to furnish certain other filling station equipment, all of which was to remain his property; that Haygood agreed to pay the taxes and insurance, etc.; that in case of fire the agreement was to be automatically terminated unless Haygood decided to rebuild, in which case the appellant was to have the right to continue "operating as per these agreements." It was further provided in the agreement that it was supplemental to the Helms lease and that Haygood, the owner, was to vacate the living quarters and that the appellant was to then have sole authority to rent those quarters for the one-year period covered by the agreement.

Thereafter, on February 21, 1952, before the expiration of the one-year period covered by the Haygood agreement, Haygood sold the property to Mrs. Idell Dowdey, who later became Mrs. Wharton. This deed, which was placed on record on April 9, 1952, made no reference to the Haygood lease.

Thereafter, on November 24, 1952, the appellant entered into a written agreement with Mrs. Dowdey and her husband, D. L. Dowdey. This agreement, which was never recorded, contains provisions to the effect that for a consideration of $200 the Haygood lease was extended until the 31st day of December, 1965. It was also provided in the so-called Dowdey lease that the appellant was renting the property for occupancy by himself and yet it also contains provisions indicating that the owner-lessor Mrs. Dowdey, was to remain in possession of the suit property and that she was obligated to handle the petroleum products distributed by appellant.

Mr. and Mrs. Dowdey remained in possession of the property with Mr. Dowdey actually operating the filling station and store connected therewith.

In October of 1952 or January of 1953, depending on whose testimony is correct, the building which had been used as a store and cafe by some of the previous owners; as well as the filling station equipment situated on the property, was almost completely destroyed by fire. The Dowdeys did not make any effort to rebuild and apparently the appellant never made any request of them that they do so.

On March 31, 1953, Mrs. Idell Dowdey, who by that time had become Mrs. Idell Wharton, sold the property to the appellee, Mr. A. E. Milner. Milner was not advised by the Dowdeys that they had entered into any kind of an agreement with the appellant or that the appellant claimed any rights in the suit property by virtue of the so-called Helms lease. Of course, the Helms lease was on record.

Milner owned property adjacent to the suit property. He was not aware that the appellant claimed any right or interest in the suit property until on or about November 21, 1953, when the appellant filed a declaratory judgment proceeding against him wherein it was alleged in substance that the appellant by virtue of the Helms lease had used the suit property for the purpose of operating a filling station thereon and that it was his intention to continue to use the premises for that purpose during

the term of that lease. The bill prayed for a declaratory judgment to the effect that the Helms lease was in full force and effect subject to renewal at its expiration for a period of ten years; that the title of Milner was acquired and remained subject to the encumbrance of the Helms lease; that Milner be enjoined from interfering with the possession of the plaintiff and his quiet and peaceable enjoyment of the premises. After Milner had filed a demurrer to the bill for declaratory judgment the circuit court of Marshall County, in equity, entered a decree on December 12, 1954, dismissing the appellant's suit against Milner on the ground that appellant had failed to appear and that the complaint had not been signed as required by Equity Rule 115. The order of dismissal was without prejudice except as to costs.

After the decree of dismissal and in October of 1954 Milner began the construction of a dwelling on the suit property, which was ready for occupancy on or about January 1, 1955.

We believe the foregoing is as accurate a summary of the circumstances surrounding the execution of the Helms lease and of the acts and conduct of the parties thereafter as can be made in view of the state of this record.

■ We see no occasion to extend the opinion any further. It seems clear to us from the testimony in this record that the decree of the trial court gave to the appellant all to which he was entitled. As we have heretofore indicated, the language of the Helms lease was not to the effect that Helms was obligated to use the petroleum products furnished by appellant. Yet that was the appellant's version of the transaction as insisted upon by him in the McKenzie litigation and as found to be correct by the trial court in that case. The execution by the appellant of the lease or agreements with the subsequent purchasers of the property and the position taken by him in the McKenzie litigation indicates to us that it was never the intention of the

parties to the Helms lease that the appellant was to have any right in the suit property greater than the right to require the sale of his petroleum products from the filling station located on the premises.

We conclude there is no merit in those assignments of error which challenge the actual decree of the trial court.

■ There are other assignments of error which attack the findings and the opinion expressed by the trial court as set out in the decree, but such expressions and opinion are not the equivalent of a decree and hence assignments of error based thereon cannot be considered. Shell Oil Co. v. Edwards, 263 Ala. 4, 81 So.2d 535; Moore v. Shipp, 262 Ala. 664, 81 So.2d 352; Employers Ins. Co. of Alabama v. Brooks, 250 Ala. 36, 33 So.2d 3; Lyall v. Lyall, 250 Ala. 635, 35 So.2d 550; Hill v. Hill, 211 Ala. 293 100 So. 340; Threadgill v. Dixie Industrial Co., 202 Ala. 309, 80 So. 391; Thompson v. Maddux, 105 Ala. 326, 16 So. 885.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and MERRILL and COLEMAN, JJ., concur.